BARPIAM, Judge
(dissenting in part).
As I understand the majority, it has concluded that the only manner in which new facilities for grain storage and shipping can be added to the Baton Rouge port is by construction of these facilities by the Port Commission with its own funds. The judgment is that Cargill has the exclusive right to operate a public grain elevator, and that the Port Commission cannot authorize the operation of any public grain elevator without offering Cargill the “right of first refusal to lease additional facilities constructed by the Port Commission * * ”. (Emphasis mine.)
This matter was presented for our determination because the Port Commission was considering acquiring grain facilities constructed by a third party in exchange for a lease on those facilities. The precise question for our decision is whether the Port Commission may allow others, at their own expense, to construct facilities which would be owned by the Commission and leased to the builders of the facilities as reimbursement of the cost of construction.
*737 I do not disagree with the majority’s conclusion that this lease contract provides an exclusive right in Cargill; but I do contend that the lease did not intend to, and could not, limit the manner in which the Port Commission may expand its grain facilities. Article 6, Section 29, of the Louisiana Constitution provides that the Commission may “construct or acquire” facilities needed. (Emphasis mine.) The majority’s interpretation of the lease contract has extended the contract so as to limit or abrogate the constitutional authority of the Port Commission to improve the port and expand its facilities by “construct [ing] or acquiring]” other facilities.
The contract should be strictly construed and limited to the rights and obligations which are properly at issue between the parties. Cargill can have no interest superior to the public’s so as to limit the manner in which the Port Commission may expand it facilities. Cargill’s interest is in its right to operate the present grain facility and to have the first refusal of the operation of other such facilities. The public purpose and public use of the port will be restricted under any other interpretation. I do not believe that the contract can curtail the authority of the Port Commission to increase its facilities by means other than construction of these facilities with its own funds.
Article 6, Section 29.1, places a $50,000,-000.00 ceiling on the outstanding indebtedness of the port. If the Port Commission has obligated itself to the full extent of its debt limit on other port facilities (produce facilities, oil facilities, etc.) and needs to expand its grain facilities, it should be allowed to acquire these facilities by construction with private funds in exchange for leases on the facilities. Allowing others to build facilities in return for leases is a most practical and reasonable way to enhance the value and services of the port. Certainly a public body should be encouraged to acquire facilities for services in a manner not entailing capital outlay and interest on bonded indebtedness, and here there is specific constitutional authority.
Since the Port Commission is granted the authority to acquire property by means other than construction with its own funds, this contract cannot be interpreted to take away this right. I would grant to Cargill the exclusive right to operate a public grain elevator “unless and until the facilities leased to Cargill are inadequate to properly handle the grain movement through the Port Area and Cargill has failed to exercise its right of first refusal” (majority opinion) to lease and operate any additional facilities “on such terms and for such payments as the Port is prepared to make to responsible third persons in good faith” (contract). I believe that within the provisions of the Constitution and the contract the “terms” for leasing and operating additional grain facilities *739 could propose that Cargill, and upon its refusal third parties, construct facilities from their own funds to he owned by the Commission and leased to the builders. I would answer the posed question thus: When facilities for grain become inadequate, the Port Commission may plan to acquire additional facilities by construction or otherwise. Such a -proposal must be made first to Cargill for acceptance or refusal, and if Cargill refuses the offer, the proposal may be made to third parties.
For these reasons I respectfully dissent in part.